THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TONI M TORRES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W COLVIN,<br><br>　　　　Defendant. | CASE NO. C15-5344 JCC<br><br>ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS |

This matter comes before the Court on Plaintiff's objections to Magistrate Judge Brian Tsuchida's Report and Recommendation (Dkt. No. 19). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby REVERSES the Commissioner of Social Security's decision denying benefits and REMANDS for further administrative proceedings.

## I.　BACKGROUND

Plaintiff is a woman in her fifties who suffers from Meniere's disease. (Dkt. No. 9-2 at 13, 16.) She appeals the Commissioner's decision to deny her disability benefits. (Dkt. No. 9-2 at 2–7.) In his R&R, Judge Tsuchida recommended that the Commissioner's decision be affirmed. (Dkt. No. 18 at 9.) Plaintiff has raised specific objections to the R&R. (Dkt. No. 19.)

## II.　DISCUSSION

### A.　Standard of Review

"The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

### B.     Plaintiff's Objections to the R&R

Plaintiff raises five objections to the R&R. The Court will conduct de novo review of each one. Fed. R. Civ. P. 72(b)(3).

#### 1.     Objection One: The R&R Misinterprets Listing § 2.07

Under Step Two of the disability evaluation process, the ALJ determined that Plaintiff suffers from Meniere's disease, and that this is a severe impairment. (Dkt. No. 9-2 at 13.) Under Step Three, the ALJ then assessed whether Plaintiff's Meniere's disease met the severity of one of the listed impairments in the regulations. (Dkt. No. 9-2 at 14.) Listing 2.07, the applicable impairment, reads as follows:

> *Disturbance of labyrinthine-vestibular function (including Meniere's disease)*, characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:
> A. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
> B. Hearing loss established by audiometry.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.07. In analyzing Plaintiff's symptoms under Listing 2.07, the ALJ focused on the frequency of Plaintiff's vertigo attacks. The ALJ found that these attacks were "infrequent" and "well controlled since her alleged onset date." (Dkt. No. 9-2 at 15.) Therefore, the ALJ held that Plaintiff's Meniere's disease did not meet the criteria of Listing 2.07. (*Id.* at 14.)

Plaintiff argues that the ALJ erred in focusing on the frequency of only her *vertigo* attacks, which are not mentioned in Listing 2.07, rather than on her general *balance*

*disturbances*, which are mentioned. According to Plaintiff, because she suffered from "chronic severe imbalance," she meets the criteria of Listing 2.07, regardless of the frequency of her vertigo attacks. (Dkt. No. 19 at 3.)

Defendant argues that another listing, 2.00(C), defines "balance disturbance" as being equivalent to vertigo, and that Listing 2.07's requirement of "frequent attacks of balance disturbance" should be read as "frequent attacks of vertigo." Defendant is incorrect. Listing 2.00(C) merely explains how to "evaluate *vertigo* associated with disturbances of labyrinthine-vestibular function, including Meniere's disease." § 2.00(C) (emphasis added). In doing so, it defines vertigo as a *type* of balance disturbance; it does not define balance disturbance *as* vertigo. § 2.00(C)(1); *see also Million v. Astrue*, No. EDCV 09-1435 AGR, 2011 WL 1156631, at \*6 (C.D. Cal. Mar. 29, 2011) (holding that Listing 2.00(C) is used to evaluate whether a claimant "meet[s] the definition of *statutory vertigo*") (emphasis added).

Consequently, the Court declines to read a vertigo requirement into Listing 2.07. The listing's plain language requires only frequent attacks of "balance disturbance." It does not mention vertigo. If Listing 2.07's drafters intended to specifically require frequent attacks of "vertigo," they would have made this clear by including it. As Listing 2.00(C) demonstrates, the drafters were well aware that vertigo is a type of balance disturbance associated with Meniere's disease. Their decision to include only the more general *category* of "balance disturbance" in Listing 2.07 indicates that a claimant need not show frequent attacks of vertigo to meet its criteria. Instead, frequent attacks of balance disturbance—construed more broadly—will suffice.

The Court agrees with Plaintiff that the ALJ only examined Plaintiff's vertigo attacks in determining whether her Meniere's disease satisfied Listing 2.07. (Dkt. No. 9-2 at 15.) This was a reversible misapplication of the correct legal standard. *Sandgathe*, 108 F.3d at 980. It was not

harmless error, because if the ALJ had examined all of Plaintiff's balance disturbances, she may have concluded that Plaintiff suffered from a severe impairment. *See Molina v. Astrue*, 674 F.3d 1104, 1115–16 (9th Cir. 2012) (holding that an error is not harmless if it "alters the outcome of the case"). In fact, the error was particularly serious because, as the Court will describe below, the ALJ's conclusion that Plaintiff's vertigo was her only pertinent symptom guided the ALJ's analysis of Plaintiff's claim as a whole.

### 2.  Objection Two: The R&R misconstrues Dr. Schwartz's opinions

In determining Plaintiff's residual functional capacity, the ALJ considered the opinion of Dr. Schwartz, Plaintiff's treating physician. (Dkt. No. 9-2 at 19.) In April 2013, Dr. Schwartz completed a medical source questionnaire describing Plaintiff's limitations due to Meniere's disease. (Dkt. No. 9-7 at 128.) In the questionnaire, Dr. Schwartz reported that Plaintiff's "Meniere's attacks" occurred "daily" and that she was "[i]ncapable of even 'low stress' jobs." (Dkt. No. 9-7 at 129, 131.) The ALJ gave minimal weight to the questionnaire, finding that it was inconsistent with Dr. Schwartz's other treatment records. (Dkt. No. 9-2 at 19.) Plaintiff argues that this conclusion was in error.

"When evidence in the record contradicts the opinion of a treating physician, the ALJ must present 'specific and legitimate reasons' for discounting the treating physician's opinion, supported by substantial evidence." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). The Court finds that the ALJ has not done so, largely because she again focused on Plaintiff's vertigo without considering the other symptoms of Plaintiff's Meniere's disease.

In conducting her analysis, the ALJ first pointed to Dr. Schwartz's December 2012 assessment, in which he found that Plaintiff had experienced "effectively no further vertigo spells" since receiving a gentamicin injection the previous month. (Dkt. No. at 15, 18; Dkt. No.

9-7 at 98.) Next, the ALJ found that in February 2013, Dr. Schwartz reported that Plaintiff had experienced "significant improvement" after her November 2012 injection, however her "vertigo episodes" had returned over the last few weeks. (Dkt. No. 9-2 at 19; Dkt No. 9-7 at 134.) Then, the ALJ found that in September 2013, Dr. Schwartz reported that after Plaintiff received another gentamicin injection in February 2013, "she had nearly 6 months of vertigo control." (Dkt. No. 9-2 at 15; Dkt. No. 9-70 at 170.) In summarizing her findings, the ALJ concluded that "[b]ased on this evidence of record, the claimant's attacks of vertigo appear to have been infrequent and well-controlled since her alleged onset date." (Dkt. No. 9-2 at 15.) The ALJ therefore decided that the April 2013 questionnaire, which asserted that Plaintiff suffered "daily" Meniere's attacks, was inconsistent with the record evidence that Plaintiff's vertigo attacks were infrequent. (*Id.*)

But even if Plaintiff was not experiencing daily vertigo attacks, she may have been suffering from other symptoms of Meniere's disease. In his April 2013 questionnaire, Dr. Schwartz reported that Plaintiff suffered from a number of symptoms in connection with her Meniere's attacks, including "[f]atigue/exhaustion," "[n]ausea/vomiting," "[v]isual disturbances," and "falls." (Dkt. No. 9-7 at 129.)[1] The ALJ's failure to consider how often Plaintiff suffered Meniere's attacks involving these and other symptoms was not harmless error, because it may have caused her to inappropriately discount Dr. Schwartz's questionnaire, impacting her determination of Plaintiff's RFC.

//

---

[1] Dr. Schwartz also responded affirmatively to a question about whether Plaintiff had a "[h]istory of frequent attacks of balance disturbance." (*Id.* at 128.) Notably, the question did not specify "vertigo."

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS
PAGE - 5

### 3. Objection Three: The R&R fails to identify specific, clear and convincing reasons to doubt Plaintiff's credibility

In making her RFC determination, the ALJ found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms" were not credible. (Dkt. No. 9-2 at 16.) The ALJ discounted Plaintiff's credibility on three grounds: (1) her hearing testimony was inconsistent with her medical records "as to the nature and severity of her vertigo attacks"; (2) her reluctance to pursue recommended physical therapy; and (3) her receipt of unemployment benefits during a period in which she claims to have been disabled. (Dkt. No. 19 at 16–18.)

An ALJ can reject a claimant's testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Plaintiff argues that each of the ALJ's reasons for discounting Plaintiff's credibility failed to meet this standard.

#### a. Hearing testimony inconsistent with medical records

In her disability report, Plaintiff asserted that she was "bedridden a minimum of four days per week from pure exhaustion and dizziness," was unable to care for herself, and could not "stand and/or walk without assistance." (Dkt. No. 9-6 at 66.) She also asserted that the gentamicin injections "cause migraine headaches [and] vomiting," and that she needs to "physically hold my head to help with the severe dizziness and spinning I experience." (*Id.*) At the hearing, she stated that treatment has not helped with her balance problems. (Dkt. No. 9-2 at 52.)

In making her adverse credibility finding, the ALJ did not address Plaintiff's stated dizziness, nausea, exhaustion, or difficulty balancing. Instead, she focused exclusively on Plaintiff's vertigo, finding that "claimant's medical records are notably inconsistent with her

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS
PAGE - 6

hearing testimony as to the nature and severity of her vertigo attacks, thus detracting from her credibility on the subject." (Dkt. No. 9-2 at 16.)

Once again, the ALJ appears to have assumed that Plaintiff's only pertinent symptom was vertigo, and that the alleviation of Plaintiff's vertigo resulted in the alleviation of her other symptoms as well. The ALJ does not, however, explain how she came to this implicit conclusion. And in fact, the treatment record confirms that Plaintiff continued to suffer from other symptoms even after the gentamicin injections reduced her vertigo. *(*Dkt. No. 9-7 at 133–34, 147, 162, 179). The ALJ therefore lacked a "specific, clear and convincing" reason for dismissing Plaintiff's statements as to the severity of her symptoms.

### b.     Reluctance to pursue physical therapy

The ALJ found that Plaintiff's reluctance to pursue physical therapy despite her doctor's recommendation also detracted from her credibility.

"[I]n assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (internal quotation marks omitted). The ALJ found that Plaintiff inadequately explained her decision not to attend physical therapy. But in reaching this conclusion, the ALJ again appears to have overemphasized Plaintiff's vertigo symptoms, finding that Plaintiff "would presumably pursue this therapy as instructed if her attacks of vertigo were preventing her from returning to gainful activity as she testified." (Dkt. No. 9-2 at 17.) As the Court has explained above, this was not a specific, clear and convincing analysis, because it effectively ignored Plaintiff's other symptoms.

### c.     Receipt of Unemployment Benefits

The ALJ also found that Plaintiff's receipt of unemployment benefits detracted from her

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS
PAGE - 7

credibility. (Dkt. No. 9-2 at 18.) The ALJ's rationale for this conclusion appears to be that "in applying for unemployment benefits, the claimant was required to attest that she was 'ready, able, and willing[] immediately to accept any suitable work which may be offered' to her." (Dkt. No. 9-2 at 17) (internal citation omitted).

This is not a specific, clear and convincing reason for an adverse credibility finding, because as the ALJ acknowledged, Plaintiff's "application for unemployment benefits does not preclude the receipt of SSI." (Dkt. No. 9-2 at 17.) Supreme Court precedent confirms that this is true, and suggests that Plaintiff's willingness to accept "suitable work" could have included "accommodated work." *See Cleveland*, *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) ("[W]hen the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI.").

The ALJ has therefore failed to properly establish why Plaintiff's unemployment benefits application detracts from her credibility.

### 4. Objection Four: The R&R fails to identify any specific, germane reasons offered by the ALJ for rejecting the lay witness evidence

Plaintiff's sister, son, daughter, and spouse all gave statements as to Plaintiff's functioning. (Dkt. No. 9-2 at 18.) The ALJ accorded limited weight to these statements. (*Id.*) "[T]he ALJ may expressly disregard lay testimony if the ALJ gives reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (internal quotation marks omitted).

Plaintiff's family members described Plaintiff as unable to care for herself or engage in most activities of daily life. (Dkt. No. 9-2 at 18.) The ALJ discounted this testimony as

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS
PAGE - 8

inconsistent with Plaintiff's medical records, which, she found, documented the "prolonged cessation of vertigo and a possible return to work following treatment." (Dkt. No. 9-2 at 18.)

But Plaintiff's family members largely focused on symptoms other than vertigo. (Dkt. No. 9-2 at 68–80; Dkt. No. 9-6 at 28–35, 82–85, 87–90.) And the Court has already pointed out that many of these symptoms persisted even after Plaintiff began receiving gentamicin injections for her vertigo. Therefore, the alleviation of Plaintiff's vertigo was not a "germane" reason to discount all of the lay witness testimony.

The ALJ also discounted this testimony as inconsistent with Plaintiff's application for unemployment benefits. But as the Court has already explained, the ALJ was insufficiently clear as to the inconsistency between Plaintiff's pursuit of unemployment benefits and her disability claim.

### 5. Objection Five: The R&R fails to give appropriate weight to Appeals Council evidence regarding Plaintiff's surgery

In December 2013, Dr. Schwartz performed surgery on Plaintiff for her Meniere's disease. (Dkt. No. 9-7 at 175.) Plaintiff submitted evidence of this procedure to the Appeals Council. (Dkt. No. 18 at 8.) "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012)

The Plaintiff's willingness to undergo surgery—and Dr. Schwartz's willingness to perform this surgery—calls into question two of the ALJ's conclusions. First, that Plaintiff's symptoms were not as severe as she claimed. And second, that Dr. Schwartz's April 2013

questionnaire overstated Plaintiff's symptoms. On remand, the ALJ is directed to reconsider her conclusions in light of Plaintiff's surgery.

### III.   CONCLUSION

For the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS for further administrative proceedings.

DATED this 2nd day of May 2016.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE